# In the United States Court of Federal Claims

No. 20-1183 C

Filed: October 29, 2021

|  |  |
|---|---|
| ADE ADEGBITE, et al., | ) |
| *Plaintiffs*, | ) ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) |
| *Defendant.* | ) ) |

*Molly Anne Elkin*, McGillivary Steele Elkin LLP, Washington, D.C., for Plaintiffs. *Sarah M. Block*, of counsel.

*Brendan David Jordan*, United States Department of Justice, Civil Division, Washington, D.C., with whom were *Brian M. Boynton*, Acting Assistant Attorney General, *Martin F. Hockey, Jr.*, Acting Director, and *Reginald T. Blades, Jr.*, Assistant Director, of counsel, for Defendant.

## **OPINION AND ORDER**

**MEYERS, Judge.**

      In this collective action, correctional officers allege that the Government has required them to work more than forty hours per week without paying them overtime. They contend that they must perform certain pre- and post-shift activities that are central to their jobs, but the Government does not pay them for this overtime work. The gravamen of the Government's motion to dismiss is that Plaintiffs fail to state a claim upon which relief may be granted. In the alternative, the Government seeks a more definite statement of Plaintiffs' claims. But the Government's motion seeks to hold Plaintiffs to a pleading standard not required by law or this Court's precedent. Therefore, the Government's motion is granted-in-part and denied-in-part.

**I.**     **Factual Background[1]**

      Plaintiffs are current and former correctional workers employed by the United States at the Federal Correctional Institution Sheridan or the adjacent Federal Detention Center in Sheridan, Oregon (collectively, the "Institution"). ECF No. 1 ¶¶ 1, 4. The Institution contains over 1,000 inmates charged with or convicted of various federal crimes, including violent and

---

[1] The facts presented are from the Complaint and presumed to be true for purposes of this motion.

drug-related offenses. *Id.* ¶ 8. Serving as correctional officers,[2] Plaintiffs allege that their "primary job duty is to maintain the safety and security of the Institution." *Id.* ¶ 9. Plaintiffs execute their job duty at assigned posts throughout the Institution, most of which are staffed for 24 or 16 hours per day while others are staffed for only 8 hours per day. *Id.* ¶ 10. Regardless of which post, Plaintiffs each work a single 8-hour shift per day, with three total shifts at the 24-hour posts and two total shifts at the 16-hour posts. *Id.* ¶ 11.

In addition to the work at their posts, Plaintiffs engage in other required activities before and after their shifts. For example, since the outbreak of the COVID-19 pandemic in March 2020, Plaintiffs undergo a health screening involving a temperature check and symptom questionnaire upon first arriving at the Institution's grounds before entering the parking lot. *Id.* ¶ 20. Plaintiffs then clear a staff screening involving walking through a metal detector and placing their duty belts and other required equipment through an x-ray machine. *Id.* ¶¶ 19-20; ECF No. 8 at 4-5. After this screening, Plaintiffs collect and don their duty belts and other necessary equipment. ECF No. 1 ¶ 19.

Plaintiffs specifically assigned to a 16-hour-post next retrieve more equipment or paperwork from one of the Institution's control centers. *Id.* ¶ 21. Then, Plaintiffs walk to their posts through two sally ports and through the housing units. *Id.* ¶ 22. While walking through the housing units, Plaintiffs must respond to emergencies that arise, including fights between inmates. *Id.* ¶ 27. If they fail to do so, Plaintiffs may face disciplinary actions, including termination. *Id.* Upon arriving at their posts, Plaintiffs inspect, account for, and exchange equipment with the post's outgoing officer. *Id.* ¶ 24. Plaintiffs also exchange information with the outgoing officer concerning any significant security events that occurred during the prior shift. *Id.* After their shifts, Plaintiffs again exchange equipment and security-related information with the oncoming officer, and then walk back and return equipment to either of the Institution's control centers. *Id.* ¶¶ 26, 27. Plaintiffs claim to have engaged in these activities for at least 15-30 minutes per day before and after their scheduled shifts. *Id.* ¶ 13.

On September 11, 2020, Plaintiffs commenced the present action, alleging that the Government violated their rights under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq*. Specifically, Plaintiffs allege that the Government failed to compensate them with overtime pay as required under the FLSA for the above pre- and post-shift activities they performed beyond their regularly scheduled 8 hours per day and 40 hours per week of work performed at either a 16- or 24-hour post since September 11, 2017. *E.g.*, *id.* ¶¶ 12, 28, 33-37; ECF No. 8 at 9, 16, 20. Plaintiffs thus seek monetary relief under the FLSA and the Back Pay Act ("BPA"), 5 U.S.C. § 5596, as well as a declaratory judgment that the Government violated the FLSA and of an accounting of all compensation owed to Plaintiffs pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202. ECF No. 1 Prayer for Relief.

In their Complaint, Plaintiffs allege that these pre- and post-shift activities connect to their "primary job duty" of "maintain[ing] the safety and security of the Institution." *Id.* ¶ 9. In general, the Complaint states that Plaintiffs "are charged with performing this job duty every

---

[2] Plaintiffs include both full-time correctional officers as well as other correctional workers, such as food services employees, unit counselors, and correctional services officers, who were "augmented" to perform correctional officer tasks. *See* ECF No. 1 ¶¶ 28-29.

2

moment that they are within the Institution from the moment they begin screening prior to their shifts until they exit the Institution after their shifts end." *Id.* They do so "by, among other things, maintaining constant vigilance to ensure that nothing out of the ordinary is occurring, immediately addressing any issues that they see no matter the location and time of day that it occurs, including before their paid shifts begin and after they end." *Id.* Regarding specific activities, the Plaintiffs allege that, when undergoing the health screening, Plaintiffs "are performing their primary duty of safety and security by assuring that the highly contagious novel coronavirus does not enter the Institution." *Id.* ¶ 20. They also allege that, in clearing the staff screening, Plaintiffs "perform their primary duty of safety and security and assist in assuring no contraband enters the Institution." *Id.* ¶ 19. Further, in walking to their duty posts, Plaintiffs allege they "perform their primary duty of safety and security . . . because they, at all times, remain vigilant, alert, and ready to respond to emergencies." *Id.* ¶ 21. "For example," Plaintiffs allege they "observe and correct inmate behavior, respond to inmate questions, check for security breaches in the perimeter fence and elsewhere in the Institution, check for contraband, run to locations where body alarms sound, and respond to other emergencies as they arise." *Id.* ¶ 23. Plaintiffs also allege that while walking back from their duty posts after their shifts, they must "remain[] vigilant, alert, and ready to respond to emergencies . . . observing and correcting inmate behavior, looking for contraband, [and] responding to body alarms and other emergencies . . . ." *Id.* ¶ 26. Lastly, they allege that, by exchanging security information with the outgoing correctional officer, "the oncoming correctional officer has all the important information they need to maintain security of the inmates, staff, and post during their shift." *Id.* ¶ 24.

## II.   Legal Standard

"A motion to dismiss . . . for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the plaintiff do not entitle him to a legal remedy." *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006) (quoting *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000)). As the Supreme Court explained, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). And to be "plausible on its face," it "does not need detailed factual allegations." *Twombly*, 550 U.S. at 555; *see also Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (Rule 8 "does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face."). In other words, the Complaint must contain enough detail "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998) (citations omitted). Nevertheless, the Court "must assume all well-pled factual allegations are true and indulge in all reasonable inferences in favor of the nonmovant." *United Pac. Ins. Co.*, 464 F.3d at 1327-28 (quoting *Anaheim Gardens v. United States*, 444 F.3d 1309, 1314–15 (Fed. Cir. 2006)).

## III.   Discussion

In its Motion to Dismiss, the Government primarily argues that Plaintiffs' Complaint fails to state a claim upon which relief can be granted under the FLSA and the BPA. ECF No. 7 at 7,

15-16. Alternatively, the Government requests that the Court order Plaintiffs to amend the Complaint to provide a more definite statement. *Id.* at 16.

### A. This Court lacks jurisdiction under the Declaratory Judgment Act and 28 U.S.C. § 1331.

Although the Government does not style its motion as challenging the Court's jurisdiction under RCFC 12(b)(1) in any respect, the Government does move to dismiss the Complaint for lack of subject matter jurisdiction insofar as it seeks relief under the DJA. *See* ECF No. 7 at 16 ("Plaintiffs' request for relief under the Declaratory Judgment Act, 28 U.S. Code §§ 2201-02, must also fail because this Court does not have jurisdiction to grant relief under the Declaratory Judgment Act."). Thus, the Court must determine whether it has jurisdiction over Plaintiffs' claims. *See* RCFC 12(h)(3).

Because it is long settled that this Court lacks jurisdiction under the DJA, the Court grants the Government's motion insofar as it challenges jurisdiction over DJA claims. *E.g., United States v. King*, 395 U.S. 1, 5 (1969) ("In the absence of an express grant of jurisdiction from Congress, we decline to assume that the Court of [Federal] Claims has been given the authority to issue declaratory judgments."); *Ghaffari v. United States*, 125 Fed. Cl. 665, 667 (2016) (holding "long-standing precedent establishes this court lacks jurisdiction to act under" the DJA). The only relief Plaintiffs seek under the DJA is "a complete and accurate accounting of all the compensation to which the plaintiffs are entitled." ECF No. 1 Prayer for Relief ¶ (b); *see* ECF No. 15 at 70:16-71:13. The Court dismisses the Complaint insofar as it seeks this declaration.

The Government also asserts that Plaintiffs improperly cite 28 U.S.C. § 1331 as providing this Court with jurisdiction. ECF No. 7 at 16. The Government is correct that 28 U.S.C. § 1331[3] grants jurisdiction to District Courts rather than this Court. *E.g., Ali v. United States*, No. 19-586C, 2019 WL 3412313, at *4 (Fed. Cl. July 29, 2019) ("The presence of a federal question or diversity of citizenship between parties provides a jurisdictional basis for federal district courts, not for this court."). This is so because § 1331 provides that "[t]he *district courts* shall have original jurisdiction . . . ." (emphasis added). And when Congress grants jurisdiction to the district courts, that grant does not provide jurisdiction to this Court because "[t]he Court of Federal Claims is not a district court of the United States . . . ." *Ledford v. United*

---

[3] Plaintiffs also cite the "Little" Tucker Act, 28 U.S.C. § 1346, for jurisdiction. ECF No. 1 ¶ 2. In relevant part, the Little Tucker Act provides concurrent jurisdiction to the District Courts for certain monetary claims this Court has jurisdiction over against the United States, but limits the District Court's jurisdiction to claims "not exceeding $10,000 in amount." 28 U.S.C. § 1346(a)(2). Given that the "Big" Tucker Act, 28 U.S.C. § 1491, grants this Court jurisdiction over these same monetary claims against the United States without regard to the amount in controversy, the Little Tucker Act is better understood as a jurisdictional grant to the District Courts rather than this Court. *See Evans v. United States*, 694 F.3d 1377, 1379 n.5 (Fed. Cir. 2012) ("The 'Little Tucker Act' authorizes the same types of suits to be brought against the Government in the Federal district courts as those authorized in the Court of Federal Claims under the 'Big' Tucker Act, so long as the damages sought do not exceed $10,000."). Thus, the Little Tucker Act is not necessary for Plaintiffs' claims.

*States*, 297 F.3d 1378, 1382 (Fed. Cir. 2002); *see also Embrey v. United States*, No. 19-740C, 2020 WL 7312184, at *5 (Fed. Cl. Dec. 11, 2020) (holding Section 1331 "does not apply to our court, however, and so does not provide the necessary jurisdiction to proceed") (citations omitted).  While the Government is correct and the Court grants its motion insofar as it challenges jurisdiction under 28 U.S.C. § 1331, that makes no difference to the case because it is unchallenged that other statutes provide jurisdiction over all of Plaintiffs' claims (other than for declaratory relief).  In other words, there is no impact from the Court granting this part of the Government's motion.

>    **B.    The Complaint States a Claim for Relief under the FLSA.**

The Government argues that the Complaint fails to state a claim for relief under the FLSA for three reasons.  First, the Government contends that the Complaint contains insufficient facts to adequately allege that each or any of the 107 Plaintiffs performed compensable work under the FLSA.  ECF No. 7 at 9.  Second, the Government asserts that the Complaint contains inadequate facts to plausibly allege that Plaintiffs' alleged work activities are compensable pursuant to the FLSA.  *Id.* at 10.  Third, the Government argues that the Complaint contains insufficient factual details regarding the timing and duration of the alleged pre- and post-shift activities.  *Id.* at 14.  The Court will address each argument in turn.

>    1.    <u>The FLSA and Portal-to-Portal Act.</u>

When applicable, the FLSA prohibits the employment of any person to work beyond a forty-hour workweek, or eight-hour workday, unless that person receives overtime pay of one and one-half times his or her regular rate of pay for the overtime hours worked.  29 U.S.C. § 207(a)(1); 5 C.F.R. § 551.501(a).  Employers who violate the statute are liable to covered employees for their unpaid overtime compensation, and "[a]n action to recover the liability . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).

Although undefined in the statute, the Supreme Court has broadly interpreted "work" under the FLSA to mean "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."  *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27, 31 (2014) (quoting *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)).  The Supreme Court has indicated that exertion is unnecessary for an activity to count as work under the FLSA, as "an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen."  *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944). "Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer."  *Id*.  Similarly, the Supreme Court defined "the statutory workweek" under the FLSA to "include[] all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690–691 (1946).

The Supreme Court's broad interpretations "provoked a flood of litigation" and "Congress responded swiftly."  *Integrity Staffing*, 574 U.S. at 31-32.  The Portal-to-Portal Act of

1947, 29 U.S.C. § 251 *et seq.*, limits an employer's liability under the FLSA for failing to pay overtime compensation for the following activities:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).

After the Portal-to-Portal Act's passage, the Supreme Court interpreted the term "principal activity or activities" to include "all activities which are an 'integral and indispensable part of the principal activities.'" *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29-30 (2005) (quoting *Steiner v. Mitchell*, 350 U.S. 247, 252-53 (1956)). "An activity is . . . integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing,* 574 U.S. at 33.

In addition, as implied by the statute, the Department of Labor explained that the Portal-to-Portal Act did not alter "the 'continuous workday rule,' under which compensable time comprises 'the period between the commencement and completion on the same workday of an employee's principal activity or activities . . . [,] whether or not the employee engages in work throughout all of that period.'" *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 226 (2014) (quoting 29 CFR § 790.6(b)); *see also IBP*, 546 U.S. at 29 (discussing § 790.6(b)'s adoption of the continuous workday rule).

Even if an activity is otherwise compensable under the FLSA, however, the de minimis doctrine may apply. *Anderson*, 328 U.S. at 692. "The de minimis doctrine limits FLSA liability for overtime activities that consume negligible amounts of time." *Bull v. United States*, 68 Fed. Cl. 212, 225 (2005). As the Supreme Court explained:

> When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.

*Anderson*, 328 U.S. at 692. To determine whether the work performed is de minimis a trial court examines: "(1) the practical administrative difficulty of recording the additional time; (2) the

6

aggregate amount of compensable time; and (3) the regularity of the additional work." *Bobo v. United States*, 136 F.3d 1465, 1468 (Fed. Cir. 1998) (quoting *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984)). Federal regulations "limit[] the application of the de minimis doctrine to periods of 10 minutes or less per day." *Bull*, 68 Fed. Cl. at 226 (citing 5 C.F.R. § 551.412(a)(1)), *clarified by* 68 Fed. Cl. 276 (2005), *aff'd*, 479 F.3d 1365 (Fed. Cir. 2007). Indeed, "[d]ecisions of this court construing the FLSA have developed a rule of thumb that [10] minutes of preliminary or postliminary work that would otherwise be compensable because it is closely related to principal activities will nonetheless be treated as non-compensable if it totals less than [10] minutes per day." *Id.* (alterations in original) (quoting *Riggs v. United States*, 21 Cl. Ct. 664, 682 (1990)).

### 2. The Complaint Adequately Alleges that All Plaintiffs Performed Compensable Work Under the FLSA.

The Government first argues that Plaintiffs' Complaint fails to state a claim for relief under the FLSA because the Complaint contains insufficient facts to adequately allege that each or any of the 107 Plaintiffs performed compensable work under the FLSA. ECF No. 7 at 9. According to the Government, "each plaintiff must plead a short and plain statement of the elements of his or her claim." *Id.* at 7 (quoting *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000)). Specifically, the Government maintains that "each plaintiff must allege with sufficient particularity facts regarding the nature of each plaintiff's employment, such as 'whether [one] was salaried or employed at an hourly wage, whether and when [one] was required to work overtime, . . . the details of [any] employment agreement,' and 'the dates on which [one] was employed.'" *Id.* at 10 (some alterations in original) (quoting *Kraemer v. Elmira Auto Paint Supplies, Inc.*, 903 F. Supp. 315, 317 (N.D.N.Y. 1995); *Maya v. Master Rest. Developer, LLC*, No. 09-23408, 2010 WL 11505851 (S.D. Fla. Feb. 9, 2010), *report and recommendation adopted*, No. 09-23408, 2010 WL 11505852 (S.D. Fla. Mar. 15, 2010)). Here, in contrast, the Government asserts that "[t]he only allegations in the complaint that relate to individual plaintiffs are the caption on the first five pages of the Complaint and an attachment that lists their names and addresses." *Id.* at 9 (citing ECF No. 1 at 1-5; ECF No. 1-1). "Other than these rote lists," the Government contends, "the allegations in the complaint are generalized to all plaintiffs." *Id.*

The Government emphasizes that "[p]leading in such a generalized manner is insufficient in this case when it is clear that not every generalized allegation applies to each plaintiff." *Id.* For example, the Government observes that all Plaintiffs do not exchange equipment and information with other correctional workers at the start and end of their shifts, as some shifts are either a duty post's first or last shift for the day. *Id.* The Government also highlights that every Plaintiff has not had to undergo the health screenings because some former officers presumably separated from the Institution before March 2020. *Id.* As a final example, the Government notes that some Plaintiffs' walk to and from their duty posts are de minimis given the likely close proximity of certain duty posts to the Institution's entrance. *Id.* Therefore, the Government maintains, "[b]ecause plaintiffs failed to state these facts regarding each individual plaintiff or any specific plaintiff with sufficient particularity, their claims must fail." *Id.* at 10.

The Court disagrees. None of the cases the Government cites support the notion that a multi-plaintiff complaint must specify the minute factual details underlying each plaintiff's

7

claim. In its motion to dismiss the Government relies mainly on *Bautista*, in which the Ninth Circuit reversed the district court's dismissal with prejudice of a multi-plaintiff employment discrimination complaint. *See* 216 F.3d at 839-42. In doing so, the majority stated that "each plaintiff must plead a short and plain statement of the elements of his or her claim." *Id.* at 840. The Government takes this statement as holding that a complaint must allege the facts supporting each plaintiff's individual claims in this case. ECF No. 7 at 9. But *Bautista* is readily distinguishable from an FLSA claim like the one pleaded in this case. In *Bautista*, 51 plaintiffs that had worked for Family Restaurants sued R.A. Music (and others) when they took over the operations of Family Restaurants and did not hire the plaintiffs. 216 F.3d at 840. Their claims were that R.A. Music did not hire them "based upon their race, age and disability though they were qualified for the positions they held with Family Restaurants and had performed their jobs satisfactorily." *Id*. Such claims necessarily require individualized pleadings. The allegations here, however, are quite different. Plaintiffs allege, *collectively*, that the Government requires them to perform certain work beyond their eight-hour workdays that is uniform for each of them, and they are not paid for it in violation of the FLSA. ECF 1 ¶¶ 6-29, 31-38; ECF No. 1; ECF No. 8 at 9, 16, 20. This removes this action from *Bautista*'s sweep.

As the Eastern District of California (which is, of course, bound to follow *Bautista*) recognized, the quoted language from *Bautista* ultimately seeks to promote "efficiency and fairness; 'unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.'" *Rodriguez v. SGLC, Inc.*, No. 2:08-01971, 2010 WL 2943128, at *3 (E.D. Cal. July 23, 2010) (quoting *Bautista*, 216 F.3d at 841). And *Rodriquez* distinguished *Bautista* because in *Bautista*:

> Plaintiffs sought to plead their discrimination claims collectively, without specifying the acts that gave rise to the dispute. Plaintiffs to that action had been hired and fired at different times and for different reasons, but this information was not provided in the complaint. In that case, a more specific pleading was necessary to serve the intent of the Federal Rules to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed.R.Civ.P. 1.

*Rodriguez*, 2010 WL 2943128, at *4 (citations omitted). But in a case like this, "efficiency and fairness would not be served by demanding a more specific pleading" because "[a] complaint that alleged separate violations on behalf of each of the [107] Plaintiffs would be dense, overlong, and unwieldy and would not facilitate a clear presentation." *Id*. (internal quotations omitted). That is particularly true here because Plaintiffs worked at different posts on different days, meaning they would apparently need to plead their entire work history to satisfy the Government. ECF No. 15 at 57:22-58:5 (explaining that Plaintiffs work different posts on different days). It is hard to imagine a less unwieldy and overlong pleading. Plaintiffs adequately plead that the Government's policies required them to work without compensation in a uniform manner. While each Plaintiff will need to prove the specific overtime hours they worked without compensation to win their case, they do not need to plead each of those hours in their Complaint.

Similarly, *Kraemer* and *Maya* do not stand for the proposition that a multi-plaintiff complaint must specify the factual allegations underlying each plaintiff's claim. In both cases, the court dismissed a single, pro se plaintiff's complaint with leave to amend it. *Kraemer*, 903 F. Supp. at 316; *Maya*, 2010 WL 11505851, at *1. Any instruction in those cases as to a complaint's content, therefore, does not apply to a multi-plaintiff complaint such as Plaintiffs'. Indeed, the Government itself invokes the argument that a case with only one plaintiff lacks relevance to a case with multiple plaintiffs. *See* ECF No. 10 at 14 (arguing that *Wilson v. District of Columbia*, 269 F.R.D. 8 (D.D.C. 2010) is distinct from *Bautista* and this case because, "unlike this case and *Bautista*, *Wilson* concerned only a single plaintiff.").

In the end, "whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Here, Plaintiffs have sufficiently alleged that they worked more than 40 hours per work week without overtime pay due to Government policies and have provided an estimate of the number of overtime hours worked. That is sufficient at this stage of the litigation. *See Dejesus v. HF Management Services, LLC*, 726 F.3d 85, 88 (2d Cir. 2013) ("[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.") (quoting *Lundy v. Catholic Health Sys. of Long Island*, 711 F.3d 106, 114 (2d Cir. 2013)); *see also Harris v. Davita Healthcare Partners, Inc. et al.*, Nos. 17-2741, 17-2744, 2018 WL 3093322, at *4 (D. Colo. June 22, 2018) (finding in two single-plaintiff cases, that plaintiffs sufficiently stated an FLSA claim to survive a 12(b)(6) when their complaints alleged they "worked 'on average 1.5 hours of overtime' per week"). In short, Plaintiffs allege that they have suffered the same harm from a common Government policy. The specifics as to each Plaintiff's injury is a matter for summary judgment or trial.

### 3. The Complaint Contains Sufficient Facts Plausibly Alleging that most of the Alleged Work Activities are Compensable Under the FLSA.

The Government next argues the Complaint fails to state a claim for relief under the FLSA because it lacks sufficient facts to plausibly allege that Plaintiffs' alleged work activities are compensable under the FLSA. ECF No. 7 at 10. To be compensable, the work must be integral to the Plaintiffs' principal activities. *See IBP*, 546 U.S. at 21, 29-30; *Integrity Staffing*, 574 U.S. at 33. Of course, before determining whether a given task is integral to Plaintiffs' principal activities, the Court must first determine what those principal activities are. *Aguilar v. Mgmt. & Training Corp.*, 948 F.3d 1270, 1276 (10th Cir. 2020) (citation omitted).

According to the Government, "[t]he principal activities of the correctional workers appear to be guarding the prison by observing convicts, preventing their escape, and enforcing prison rules." ECF No. 10 at 3 (citing ECF No. 1 ¶¶ 9, 23). The Plaintiffs allege, however, that their principal activity "is to maintain the safety and security of the Institution." ECF No. 1 ¶ 9; ECF No. 8 at 12-14. And the Government argues that this "nebulous" description is insufficient to establish Plaintiffs' principal activities because it would allow anything to count as integral to these activities and compensable under the FLSA. ECF No. 10 at 1, 3-4. While the Plaintiffs' description of their principal activities may be overbroad, it is not fatal to their claims because in elucidating the "security" Plaintiffs provide, they allege they "observe and correct inmate behavior, respond to inmate questions, check for security breaches in the perimeter fence and

9

elsewhere in the Institution, check for contraband, run to locations where body alarms sound, and respond to other emergencies." ECF No. 1 ¶ 23. Providing "security" in this manner is a sufficient description. *See Aguilar*, 948 F.3d at 1277 ("[T]he officers' principal activities include maintaining 'the custody and discipline of inmates,' 'supervising detainees,' 'searching for contraband[,] and providing security.'") (second alteration in original).

The Government argues that the alleged work activities are not integral and indispensable to these principal activities and thus are non-compensable for purposes of the FLSA. ECF No. 10 at 4-5. The Court addresses them in turn.

        *a)*        *Health screenings.*

Plaintiffs argue that passing through the health screening that is necessitated by the COVID-19 pandemic is part of their primary activity of "maintain[ing] the of the safety and security of the Institution." ECF No. 1 ¶¶ 9, 20. The Government disagrees and compares the health screenings to the post-workday antitheft security screenings that were held as not integral and indispensable for warehouse employees in *Integrity Staffing*, 574 U.S. at 35. ECF No. 7 at 10-12. The Government also argues that people in many segments of society must undergo health screenings to prevent the spread of coronavirus, and thus these screenings are not particularly intrinsic to Plaintiffs as correctional officers. ECF No. 7 at 11 (citing *Whalen v. United States*, 93 Fed. Cl. 579, 600-01 (2010)), as "finding that security screening procedure that applied to everyone who entered a military base was not a work activity when employees underwent the screening"). Finally, the Government argues that "assuring that the highly contagious novel coronavirus does not enter into the Institution was the principal activity of those administering the health screenings, not those undergoing the health screenings." ECF No. 10 at 5 (internal quotation marks omitted).

While the Court does not find the Government's first two arguments compelling at this stage of the litigation (they may be more compelling after discovery), its third is correct. Given the types of "security" that Plaintiffs provide, *see* ECF No. 1 ¶ 23, ensuring the inmates' health is not one of their responsibilities. Indeed, nowhere in the Complaint is any allegation that Plaintiffs provide health care to inmates in their custody. The responsibility to care for the health thus falls on others in the Institution, presumably the same ones that were conducting the health screening to the Plaintiffs. In other words, preventing the coronavirus from getting into and/or spreading within the Institution is not integral to Plaintiffs' principal activities. Therefore, the Complaint fails to allege that the time spent passing through the Covid-19 screening is integral to the Plaintiffs' principal activities as correctional officers and, therefore, it is non-compensable.

        *b)*        *Security screenings.*

After passing through the coronavirus health screening, the Plaintiffs pass through security screenings, which include passing through metal detectors. ECF No. 1 ¶ 19. Here too the Government argues that security screening is integral to the activities of those performing the screening, not the Plaintiffs. According to the Government, "the activity of preventing contraband from entering the prison is the job of those administering the screening, not those undergoing the screening." ECF No. 10 at 7. Assuming that the security screening operators' principal activities are as the Government asserts, the Government does not explain why the

screenings cannot also be integral to Plaintiffs' principal activities. Here Plaintiffs do contend that their principal activities include controlling contraband. ECF No. 1 ¶ 23.

Other courts have found activities like those alleged by the Plaintiffs to be compensable under the FLSA based on similar descriptions of principal activities. In *Aguilar*, the Tenth Circuit determined that detention officers' undergoing a security screening upon arriving at the prison was integral and indispensable to their principal activities of "maintaining the custody and discipline of inmates, supervising detainees, searching for contraband[,] and providing security." 948 F.3d at 1277 (alteration in original) (citation and internal quotation marks omitted). The Circuit reasoned that the security screening "prevent[s] weapons and other contraband from entering the prison[, which] . . . is necessarily tied to the officers' work of providing prison security and searching for contraband." *Id.* at 1278 (citation and internal quotation marks omitted); *see also Roberts v. State of Arizona*, 483 P.3d 212, 220-21 (2021) (finding security screening integral and indispensable to correctional officers' principal activity of maintaining prison safety and security). As explained above, that is what Plaintiffs here allege as well.

To be sure, there are courts that have gone the other way. One the Government relies on is *Henderson v. Cuyahoga County*, No. 20-1351, 2020 WL 5706415 (N.D. Ohio Sept. 24, 2020). ECF No. 10 at 7. There, the District Court granted a Rule 12(b)(6) motion to dismiss a detention officer's FLSA claim regarding the unpaid pre-shift activity of undergoing a security screening. *Henderson*, 2020 WL 5706415, at *3. Specifically, the officer's complaint alleged that his duties required him to "search for contraband and provide security," and that the security screening serves "the purposes of safety, and to prevent . . . inadvertently or intentionally bringing contraband into the prison." *Id.* at *1 (citation omitted). Henderson further alleged that "[k]eeping weapons and other contraband out of the prison is necessarily tied to the . . . work of providing security and searching for contraband[,]" and, "[t]hus, undergoing security screenings is integral and indispensable to the . . . principal activities." *Id.* (citation omitted). The District Court held that undergoing the security screening is not compensable work under the FLSA because "[w]hile the pre-shift security screening may relate to part of the activity Plaintiff performs during his shifts, *i.e.*, searching for contraband, the Plaintiff could still perform his job effectively if the pre-shift screenings were eliminated." *Id.* at *3. Here, the Government asserts that "Plaintiffs' complaint . . . suffers the same defect as the *Henderson* complaint." ECF No. 10 at 7.

*Henderson* is not persuasive because it is unclear how that Court concluded that "Plaintiff could still perform his job effectively if the pre-shift screenings were eliminated" based solely on the pleadings as required under RCFC 12(b)(6). There is certainly nothing in the pleadings before this Court that would allow any such holding here. Again, this is a factual matter that is not amenable to resolution at this stage of the litigation. Therefore, the Court finds *Aguilar* more persuasive on this point and agrees with it at this stage of the litigation. If discovery shows that Plaintiffs could perform their principal duties effectively without the security screenings, the Government may well prevail on summary judgment or at trial on that basis. But it cannot prevail now.

     c)  Donning and doffing of equipment.

11

The Government argues the collecting and donning of duty belts and other required equipment is comparable to donning and doffing activities that courts have found non-compensable under the FLSA. Thus, the Government contends that getting and returning of this equipment is not compensable because it is akin to the donning and doffing of protective gear that was determined to be non-integral to nuclear power plant workers in *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 594-95 (2d Cir. 2007). ECF No. 10 at 8-9. Similarly, the Government equates the collecting and donning of duty belts and other required equipment to the placement of safety glasses, ear plugs, a hard hat, and safety shoes that was found to be non-compensable for truck drivers in *Reich v. IBP, Inc.*, 38 F.3d 1123, 1126 (10th Cir. 1994). ECF No. 10 at 8-9.

Whatever the merits of those holdings, the Court finds that this is a factual question for resolution following discovery. The Complaint adequately alleges that the equipment here—*e.g.*, keys, chits, etc.—is integral to the Plaintiffs' work. As the Circuit found in *Aguilar*, returning equipment, is "integral and indispensable to the officers' principal activities of maintaining custody and discipline of the inmates and providing security." 948 F.3d at 1283. As the Circuit explained, "the officers use keys to guard the inmates and to lock and unlock doors to ensure security; use radios to communicate with officers at their posts and to give them directions and instructions throughout the day; and use [h]and restraints and pepper spray . . . as both a deterrent and if necessary, to control unruly inmates." *Id.* at 1280 (alteration in original) (citation and internal quotation marks omitted); *see also Hootselle v. Missouri Dep't of Corr.*, 624 S.W.3d 123, 141 (Mo. 2021) (en banc) (holding that picking up and returning equipment such as keys and radios is integral and indispensable to corrections officers' principal activities of supervising, guarding, escorting, and disciplining offenders). It is difficult to imagine how correctional officers could do their work without their duty belts and equipment that they carry, but that is a question for another day.

### d) *Walking to and from assigned posts.*

The Government challenges the time walking to and from duty posts before and after shifts while remaining "vigilant, alert, and ready to respond to emergencies" to maintaining "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform," which is not compensable for FLSA purposes under the Portal-to-Portal Act, 29 U.S.C. § 254(a). ECF No. 7 at 12-13 (quoting ECF No. 1 ¶¶ 21, 23). The Government argues that this time is non-compensable under *Whalen*, 93 Fed. Cl. at 600-01. *See* ECF No. 15 at 23:12-23, 24:8-17, 25:11-17. In *Whalen*, a group of air traffic controllers argued that they should have been paid for passing through security screenings and travelling from the security screening at the entrance to Edwards Air Force Base to their duty stations. 93 Fed. Cl. at 597. Judge Lettow rejected this argument with a compelling analysis of whether these activities were integral to the air traffic controllers' principal activities. But *Whalen* sheds little light on whether the time prison guards spend walking through the prison while required to perform activities that appear almost indistinguishable from the activities they perform at their duty stations is compensable. *See* ECF No. 1 ¶¶ 21-23. According to the Complaint, while walking to and from their assigned duty post Plaintiffs must "remain[] vigilant, alert, and ready to respond to emergencies while within the secured confines of the Institution, observing and correcting inmate behavior, looking for contraband, responding to body alarms and other emergencies . . . ." *Id.* ¶ 26. Whether air traffic

controllers perform their principal activities while travelling from a security checkpoint to the control tower (clearly, they do not) sheds no light on whether Plaintiffs' can prevail here. The same is true of the other cases the Government relies upon that do not arise from correctional officers. *See Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1343 (11th Cir. 2007) (traveling through job site on employer vehicles); *Gorman*, 488 F.3d at 594-95 (ingress and egress through security procedures)).

The Government also challenges the notion that simply remaining vigilant is sufficient to make Plaintiffs' walking through the Institution compensable. Here, the Government compares this time to time the Court found non-compensable in *Akpeneye v. United States*, 138 Fed. Cl. 512 (2018). In *Akpeneye*, the Court found that although Pentagon security officers had to remain vigilant, ready to respond to emergencies, and check their radios during their mid-day breaks, that time was not compensable. But Akpeneye does not compel dismissal here for several reasons. While remaining vigilant while guarding the Pentagon is clearly of vital importance, it is not the same thing as remaining vigilant while walking through a prison where the people Plaintiffs are guarding may attack them. More importantly, *Akpeneye* granted summary judgment on this point based on facts developed in discovery. *Id*. at 543.[4]

Similarly, the Government challenges the Plaintiffs' claims under *Babcock v. Butler County*, 806 F.3d 153 (3d Cir. 2015), which affirmed the dismissal of an FLSA complaint seeking compensation for a 15-minute unpaid portion of a one-hour lunch break. In *Babcock*, the Circuit affirmed under the "predominant benefit test," which determines "whether the officer is primarily engaged in work-related duties during" uncompensated periods. *Id*. at 156 (citation omitted). But this test requires the Court to evaluate "the totality of the circumstances to determine, *on a case-by-case basis*, to whom the benefit . . . inures." *Id*. at 157 (emphasis added). And in *Babcock*, the Circuit explicitly noted that even though the District Court dismissed the complaint under Rule 12(b)(6), "there has been . . . 'sufficient development of the facts to enable a capable application of the appropriate predominant benefit standard . . . .'" *Id*. at 158. That is not the case here.

Lastly, the Government asserts that Plaintiffs' alleged work activity of walking from the staff screening to their posts was not compensable because, in their Response brief, "[P]laintiffs claim that they do not 'perform their primary job duty' until 'after clearing the second sally port.'" ECF No. 10 at 9 (quoting ECF No. 8 at 6)[5]. Accordingly, the Government argues that "[P]laintiffs do not allege any facts showing that the first part of the walk . . . is any different than a continuation of their commute to their duty stations, which is not compensable." *Id*. (citations omitted). The Government misquotes Plaintiffs' Response in advancing this argument. The full sentence to which the Government refers in Plaintiffs' Response reads, "[a]fter clearing the second sally port at the FCI, Plaintiffs *continue* to perform their primary job duty while walking to their posts." ECF No. 8 at 6 (emphasis added). Contrary to the Government's

---

[4] The Court also notes that *Akpeneye* denied summary judgment on the remaining claims, including donning and doffing, because of disputed material facts. 138 Fed. Cl. at 542-43. This further supports denial of the Government's motion here.

[5] In its Reply, the Government mistakenly cites pages 9-10 of Plaintiffs' Response as the source of Plaintiffs' quoted language. It appears on page 6 of Plaintiffs' Response.

mischaracterization, Plaintiffs neither say nor imply that they only perform their primary job duty after clearing the second sally port and not beforehand on the walk from the staff screening.

But, of course, other courts have found the time prison guards spend walking through a prison to be compensable. The Missouri Supreme Court in *Hootselle* found as integral and indispensable to the corrections officers' principal activities the requirement while walking to and from their posts of being "on duty and expected to respond to incidents involving offenders; required to act as prison guards whenever they are inside the prisons; and required to remain vigilant and respond to incidents as they arise." 624 S.W.3d at 141 (citation and internal quotation marks omitted). The reason, the court explained, is that these activities are what the officers are employed for—supervising, guarding, escorting, and disciplining offenders—regardless of whether they perform these activities at their posts or away from them. *Id.* at 142.

### e) *Exchange of information at shift change.*

Lastly, the Government asserts that the exchange of information and equipment between outgoing and incoming correctional officers was no more than a voluntary courtesy and cannot be accurately calculated by a practicable system. In support of this argument the Government cites the court's finding in *Battery Workers' Union Local 113, United Elec., Radio & Mach. Workers of Am., C. I. O. v. Elec. Storage Battery Co.*, 78 F. Supp. 947 (E.D. Pa. 1948), "that an early relief practice practiced by fixed post guards was not compensable work time because it was voluntarily practiced by the guards and no practicable system could be adopted that would accurately reflect exact time of guards on post." ECF No. 7 at 13-14. The relevance of this is puzzling. Plaintiffs do not allege that they are engaged in an "early relief practice," they allege that they "perform a vital (but unpaid) information exchange with the outgoing correctional officer about any significant security events that occurred the previous shift so that the oncoming correctional officer has all the important information they need to maintain security of the inmates, staff, and post during their shift." ECF No. 1 ¶ 24.

The Government also equates the outgoing officer's exchange to the post-shift briefing that was determined to not be integral and indispensable to the outgoing correctional officers in *Bustillos v. Board of Cnty. Comm'rs of Hidalgo Cnty.*, No. 13-0971, 2015 WL 8014565, at *16 (D.N.M. Oct. 20, 2015), *aff'd*, 697 F. App'x 597 (10th Cir. 2017). ECF No. 10 at 11. But *Bustillos* does not support dismissal here because *Bustillos* holds that pre-shift briefings are necessary for the oncoming officer to perform his or her job, while the post-shift briefing is not. In other words, the briefing is compensable for the oncoming officer but not the outgoing one. *Id*. at *16-17. But the Court cannot determine that all briefings are non-compensable today.

### f) *The continuous workday rule.*

The Government may be vindicated through discovery and be able to show that some, if not all, of the alleged work activities are non-compensable under the FLSA. But those issues are not for the Court to determine at this stage. This is particularly true here because the continuous workday rule supports that the Complaint sufficiently states that Plaintiffs' alleged work activities are compensable under the FLSA. Specifically, because the Complaint states a claim for relief regarding Plaintiffs' first and last alleged work activities of the day, undergoing the security screening and returning equipment to either of the Institution's control centers, all the

intermediary activities would likely be compensable under the continuous workday rule. Indeed, the court in *Aguilar* found that all the detention officers' alleged work activities were compensable under the FLSA pursuant to the continuous workday rule after finding that the officers' first alleged activity, undergoing the security screening, and the last alleged activity, returning keys and equipment, were integral and indispensable to their principal activity. 948 F.3d at 1279-80, 1283, 1289.

The Government argues that the continuous workday rule does not apply to Plaintiffs' alleged work activities, asserting that the Plaintiffs' activities are each de minimis. ECF No. 10 at 13. The Government cites *Singh v. City of New York*, 524 F.3d 361, 371 n.8 (2d Cir. 2008), noting that "a de minimis principal activity does not trigger the continuous workday rule." ECF No. 10 at 13. Thus, the Government concludes that, "to the extent the individual actions as alleged in plaintiffs' complaint were not preliminary, they were each de minimis and therefore cannot serve as a trigger for the 'continuous workday rule.'" *Id*. The Court does not agree. As an initial observation, other courts disagree with *Singh* and hold that a de minimis principal activity can trigger the continuous workday rule. *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 377-78 (4th Cir. 2011); *Butler v. DirectSat USA*, 55 F. Supp. 3d 793, 816-17 (D. Md. 2014) (holding that a de minimis principal activity can trigger the continuous workday rule). More importantly, as the Fourth Circuit explained:

> In applying the de minimis rule, we consider the aggregate amount of time for which the employees are otherwise legally entitled to compensation. *See* DOL Wage & Adv. Mem. No.2006–2 n.1 (May 31, 2006). We do not, as [defendant] suggests, evaluate each task or group of tasks separately to determine if the time period is de minimis. Adopting [defendant's] approach would undermine the purpose of the FLSA . . . .

*Perez*, 650 F.3d at 373. Whether Plaintiffs can prevail and show that any of the work is compensable is not the question for today. The issue before the Court is whether the Plaintiffs have adequately pleaded that they are required to work at least ten minutes of compensable work beyond their eight-hour shifts without pay. They have done so.

        4.      <u>The Complaint Contains Sufficient Factual Details Regarding the Timing and Duration of the Alleged Work Activities.</u>

The Government relatedly argues that Plaintiffs fail to state a claim because they do not allege how much time each pre- and post-shift activity takes. ECF No. 7 at 14 (citing ECF No. 1 ¶ 13). Yet, the Government concedes that a proper FLSA claim only requires an aggregate of over ten minutes of uncompensated work. ECF No. 10 at 11-12. But the Government contends that because the Complaint does not specify how much time each activity takes each day, Plaintiffs cannot establish how much time they spent performing the alleged uncompensated work. The Court cannot agree.

Plaintiffs' alleging that they spent between fifteen-to-thirty minutes per day in total before and after their scheduled shifts performing required, uncompensated work is not implausible. That is, there is nothing implausible about the allegation that the activities

15

addressed above that are potentially compensable took between 15-30 minutes to complete. Given that the Court found the health screenings to be non-compensable, the Court does consider whether that holding renders the allegation that the remaining activities took between 15-30 minutes implausible.

While it is true that Plaintiffs do not specify how much time each activity takes, even without the health screenings, it remains plausible that the remaining activities take between 15-30 minutes per day. In fact, the Complaint alleges as much. The Complaint alleges that "[a]t all times material herein, defendant has suffered or permitted plaintiffs to work at least 15-30 minutes each shift, and sometimes more, before and after their scheduled shift times without compensating plaintiffs for this work time." ECF No. 1 ¶ 13. And the Complaint seeks relief back to September 11, 2017 (three years prior to Plaintiffs' filing the Complaint). *Id.* ¶ 33. But the coronavirus screenings did not start until March 2020, after the Covid-19 pandemic had begun to spread. *Id.* ¶ 20. Thus, the Complaint alleges that Plaintiffs worked between 15-30 extra minutes each shift before the health screenings as well, which is plausible.

In the end, the Plaintiffs have adequately pleaded their claims and the Government's motion to dismiss their FLSA claims fails.

### C. Plaintiffs' Complaint States a Claim for Relief Under the BPA.

The Government also argues that the Complaint fails to state a claim for relief under the BPA. ECF No. 7 at 15. The BPA, in pertinent part, provides:

> An employee of an agency who . . . is found . . . to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee—
>
> (A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect—
>
> (i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred . . . .

5 U.S.C. § 5596(b). In arguing that the Complaint fails to state a claim for relief under the BPA, the Government relies solely on its contention that Plaintiffs' claims for relief under the FLSA fail. ECF No. 7 at 15-16. This is because the BPA "is not itself a jurisdictional statute. It is merely derivative in application, depending on a prior finding of appropriate jurisdiction in the Claims Court." *Refaei v. United States*, 129 Fed. Cl. 1, 23 (2016) (quoting *Mitchell v. United States*, 930 F.2d 893, 897 n.3 (Fed. Cir. 1991)) (additional citations omitted). Therefore, "'[u]nless some other provision of law commands payment of money to the employee for the 'unjustified or unwarranted personnel action,' the Back Pay Act is inapplicable.'" *Id.* (quoting *Spagnola v. Stockman*, 732 F.2d 908, 912 (Fed. Cir. 1984)) (additional citations omitted).

16

The Government's argument here is that because the FLSA purportedly is inapplicable to this case, the Plaintiffs' BPA claims must fail as well. ECF No. 7 at 15-16. But as explained above, the Plaintiffs adequately pleaded their FLSA claims, which survive the Government's motion. With the FLSA providing jurisdiction, there is no basis to dismiss Plaintiffs' BPA claims.

### D. The Complaint Does Not Require a More Definite Statement.

As an alternative to dismissal, the Government moves the Court to order Plaintiffs to provide a more definite statement of their claims under RCFC 12(e). ECF No. 7 at 17. According to the Government, "[b]ecause of the insufficiently plead facts regarding each of the 107 plaintiffs, the nature of the pre and post-shift activities, and the timing of these activities, defendant cannot prepare an adequate response to the complaint." *Id*. "Without such relief," the Government adds, it "would be required to answer a factually vague and ambiguous complaint and could therefore be prejudiced." *Id*.

RCFC 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." As discussed above, however, a complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8. Thus, a motion under RCFC 12(e) "must point out the defects complained of and the details desired." RCFC 12(e). Such a motion under RCFC 12(e) is "designed to remedy unintelligible pleadings, not to correct for lack of detail." *Adams v. United States*, 151 Fed. Cl. 522, 529 (2020) (quoting *Goodeagle v. United States*, 111 Fed. Cl. 716, 722 (2013)). The remedy for lack of detail in pleadings is discovery. *Whalen v. United States*, 80 Fed. Cl. 685, 693–94 (2008). Further, a more definite statement is unwarranted where the Government possesses the relevant records. *Id*.; *Fed. Air Marshals v. United States*, 74 Fed. Cl. 484, 488 (2006) (denying RCFC 12(e) motion because Government has control over the relevant records and could easily access those documents during discovery).

Here, the Government's request for a more definite statement from the Complaint fails because the Complaint is not "so vague or ambiguous that the [Government] cannot reasonably prepare a response." RCFC 12(e). The only issue the Government cites with the Complaint is its general lack of "facts regarding each of the 107 plaintiffs, the nature of the pre and post-shift activities, and the timing of these activities." ECF No. 7 at 17. But these deficiencies can be readily cured by discovery. Furthermore, the Complaint is hardly unintelligible. It provides Plaintiffs' names, their places of employment, their employment date range, their assigned posts, and their alleged work activities. *See generally* ECF No. 1. The Government's extensive and detailed briefing on its motion also confirms the Complaint's intelligibility. *See generally* ECF Nos. 7 and 10. And as Plaintiffs correctly note, the Government has in its custody the information it seeks. ECF No. 8 at 20.

The Government does not dispute this, but instead argues that the Complaint "makes defendant's searches through its records unnecessarily onerous and burdensome" and that "it is substantially more difficult, and in some cases may be impossible, to find certain information without cues from factual allegations." ECF No. 10 at 15. The Government adds that "[t]he difficulty of this task is compounded by the fact that there are more than 100 named plaintiffs on

the complaint." *Id*. This is unconvincing because the remedy to these difficulties is not requiring Plaintiffs to amend their Complaint, but discovery. The Plaintiffs have alleged that they are entitled to their claimed overtime on dates they worked at duty posts that are staffed 16 or 24 hours per day. Of course, they work different posts on different days. But Plaintiffs have identified which duty stations are 16-hour posts and which are 24-hour posts. ECF No. 1 ¶¶ 14-15. The Government can produce the time records for each Plaintiff, which does not strike the Court as a Herculean task and propound discovery to Plaintiffs to have them sort through the data and provide the Government the additional information it seeks based on the records produced.

Accordingly, the Court denies the Government's alternative request for a more definite statement from Plaintiffs' Complaint.

### IV. Conclusion

As should be clear by now, the Government's motion may succeed at summary judgment when facts are established through discovery. But that does not mean it can prevail now as a motion to dismiss for failure to state a claim. Because the Court holds that the Plaintiffs have adequately pleaded their claims:

1. The Government's Motion to Dismiss, ECF No. 7, is hereby **GRANTED-IN-PART** as to the Complaint's requested relief pursuant to the Declaratory Judgment Act and jurisdiction under 28 U.S.C. § 1331, but **DENIED** in all other respects; and

2. Plaintiffs' Motions for Leave to File Notice of Supplemental Authority, ECF Nos. 9 and 16, are **GRANTED.**

**IT IS SO ORDERED.**

s/ Edward H. Meyers
Edward H. Meyers
Judge
